IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES of AMERICA                              PLAINTIFF/RESPONDENT

V.                               No.  2:09-CR-20059
                                 No.  2:11-CV-02055

JUAN AMADOR-VILLANUEVA                               DEFENDANT/PETITIONER


<u>REPORT AND RECOMMENDATION</u>


Before the undersigned for report and recommendation is the petitioner's Habeas Corpus

Petitions, *See ECF No.* 30 filed March 25, 2011, under 28 U.S.C. Section 2255.  The

Government filed its Response, *See ECF No.* 34 on April 27, 2011, and the Petitioner filed a

Reply, *See ECF No.*  35 on May 19, 2011.

### I. Background

On September 23, 2009, the defendant was arrested based on a Criminal Complaint filed

in the Western District of Arkansas, Fort Smith Division, on September 16, 2009, charging him

with conspiracy to harbor and shield illegal aliens for financial gain, in violation of Title 8,

United States Code, Sections 1324(a)(1)(A)(iii) and (v)(I). (Doc.1).

On September 25, 2009, the defendant appeared for an Initial Appearance with Attorney

Daniel Stewart before the Honorable United States Magistrate Judge James R. Marschewski.

Attorney Daniel Stewart was appointed to represent the defendant. Amador-Villanueva was

advised of his rights, the maximum penalties and the charge contained in the complaint. The

defendant waived the issues of probable cause and detention and was remanded to the custody of

-1-

the United States Marshal's Service. (Doc. 2).

On October 13, 2009, Attorney Bobby Digby, II entered an appearance on behalf of the defendant and filed a motion for a bond hearing. (Doc. 7 & 8). A detention hearing was set for October 19, 2009, before Honorable United States Magistrate Judge James R. Marschewski in Fort Smith, Arkansas.  On October 19, 2009, Attorney Bobby Digby, II appeared with the defendant for the detention hearing and announced to the Court that the defendant did not desire to proceed with the detention hearing. The defendant was remanded to the custody of the United States Marshal's Service.

On October 22, 2009, Attorney Joel Huggins filed a motion to substitute attorney and appear on behalf of Amador-Villanueva. (Doc. 9). On October 23, 2009, the court granted this motion adding Joel Huggins as counsel and terminating Attorney Bobby Digby, II as Amador-Villanueva's counsel.

On October 29, 2009, the defendant appeared with his retained counsel, Attorney Joel Huggins, before the Honorable United States District Judge Robert T. Dawson for a waiver of indictment and plea hearing. (Doc. 10). The defendant waived indictment and plead guilty to an Information charging him with conspiracy to harbor and shield illegal aliens for financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), (v)(I) and (a)(1)(B)(I), and aiding and abetting money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(I) and 2. The Information also included a Forfeiture Allegation which stated that upon conviction of Counts One and Two of the Information, the defendant consented to forfeit to the United States pursuant to 18 U.S.C. § 982, any and all interests the defendant has to any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the

-2-

said violations, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations and included a list of the real and personal properties found therein. (Doc. 11; Plea Agreement ¶¶ 1 and 19).

At the Plea Hearing, Amador-Villanueva acknowledged that he had signed the Waiver of Indictment and that he understood it. (Plea Proceedings Transcript, hereinafter "PPT," p. 6). A signed Plea Agreement was produced in which Amador-Villanueva agreed to waive indictment by a grand jury, consent to the filing of the two-count Information, plead guilty to the two-count Information and consent to the forfeiture of the property included in the Forfeiture Allegation of the Information. (Doc. 13). Additionally, Amador-Villanueva acknowledged that he had signed the Plea Agreement and that he understood it. (PPT, p. 7). Furthermore, Amador-Villanueva stated that he believed the United States could prove the facts as recited in the factual basis for the plea. (PPT, p. 14). A signed Preliminary Order of Forfeiture was produced in which Amador-Villanueva consented to the forfeiture of any and all interest in the personal and real property, including waiving all claims, title and ownership to the property included in the Preliminary Order of Forfeiture. The Preliminary Order of Forfeiture was signed by the defendant, his counsel Joel Huggins, Assistant United States Attorney Tracy Triplett and the Honorable Judge Robert T. Dawson. (Doc. 14). Subsequently, the Court accepted Amador-Villanueva's plea of guilty and ordered a Presentence Report. (PPT, pp. 14 - 16).

On February 24, 2010, an initial Presentence Investigation Report ("PSR") was completed by the United States Probation Office. On March 1, 2010, the United States advised the probation office that it had no objections to the PSR. On March 19, 2010, Attorney Joel Huggins advised the probation office that the defendant did not have any objections to the PSR.

(Later filed as Doc. 21).

On July 16, 2010, Amador-Villanueva appeared before the Honorable United States District Judge Robert T. Dawson for sentencing. (Doc. 20). Amador-Villanueva was sentenced to 15 months imprisonment, (a downward variance outside of the advisory guideline range), 3 years supervised release, and a $100.00 special assessment on each of the two counts to run concurrently. (Doc. 22; Sent. Tr. pp. 13 - 14). As part of his sentence, a Final Order of Forfeiture was signed which ordered the forfeiture of all the defendant's interests in the property included in the Order. (Doc. 24; Sent. Tr. p. 14). The defendant was ordered to self report to the Bureau of Prisons on September 28, 2010, to begin serving his term of imprisonment. (Sent. Tr. p. 15).

On March 25, 2011, Amador-Villanueva filed this instant Motion to Vacate, Set Aside, or Correct Sentence (Doc. 30) alleging that the sentencing court deprived him of due process because (1) the sentencing was premised on materially prejudicial factual errors and (2) the court failed to explain the "nature of the money laundering charge. The Petitioner also contends that (3) he received Ineffective Assistance of Counsel and alleged five particular claims. Finally the Petitioner contends (4) that it was error for the government to forfeit any property because his underlying conviction was invalid (ECF No. 30).

## II.  Discussion

### 1.  Factual Errors:

The Petitioner first contends that the court erred in accepting his plea to the Money Laundering charge because "none of the funds that were laundered were the proceeds of a specified unlawful activity" and "were payments made to Amador Poultry Contracting and/or

-4-

related companies by Tyson Foods, O.K. Foods and other businesses for legitimate services rendered by Amador." (ECF No. 30, p. 4).

A § 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus" (See *Davis v. United States*, 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974)) but it is not a substitute for direct appeal. (See *U.S. v. Wilson*, 997 F.2d 429, 431 (C.A.8 (Ark.),1993)). Petitioner may not obtain § 2255 relief for "unappealed errors to which no contemporaneous objection was made" unless he can show both cause and prejudice. *Reid v. United States*, 976 F.2d 446, 448 (8th Cir.1992), cert. denied, 507 U.S. 945, 113 S.Ct. 1351, 122 L.Ed.2d 732 (1993).

Non-constitutional and non-jurisdictional claims are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal. *Brennan v. U.S.*, 867 F.2d 111 at 120; *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir.1988). A petitioner simply cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992); see *Davis v. United States*, 417 U.S. 333, 345 & n. 15 (1974) (federal prisoner cannot assert on collateral attack a non-constitutional claim that was not raised on direct appeal); *U.S. v. Capua*, 656 F.2d 1033 at 1037 (1981), *Anderson v. U.S.* 25 F.3d 704, 706 (C.A.8 (N.D.),1994).

The Supreme Court has stated that "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982). "[N]ormally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir.1987) (citing *448 *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22

L.Ed.2d 227 (1969)).*Reid v. U.S.* 976 F.2d 446, 447 -448 (C.A.8 (Mo.),1992)

The Petitioner's claim is non-constitutional and non-jurisdictional and is procedurally barred by his failure to appeal. Even if not procedurally barred it is without merit.

In order to be found guilty of money laundering under § 1956(a)(1)(A)(I), the government must prove that the defendant "engaged in financial transactions with the knowing use of the proceeds of illegal activities" and with the "intent to promote the carrying on" of unlawful activity. *U.S. v. Hildebrand*, 152 F.3d 756 at 762 (quoting § 1956(a)(1)(A)(I)). Thus, although the prohibited conduct is characterized as money laundering, it is different from traditional money laundering because the criminalized act is the reinvestment of illegal proceeds rather than the concealment of those proceeds. See id. (contrasting § 1956(a)(1)(A)(i)'s prohibition of reinvestment money laundering to § 1956(a)(1)(B)(i)'s prohibition of concealment money laundering). *See also U.S. v. Jolivet* 224 F.3d 902, 909 (C.A.8 (Mo.),2000).

The facts set forth in paragraph eight of the plea agreement and stipulated to by the Defendant clearly establish that work was performed by illegal aliens with the knowledge and under the supervision and control of the defendant and that he continued to use those funds so generated to increase his illegal business activities.

**2. Voluntary Plea:**

The Petitioner next contends that his plea was not voluntary because there was no factual basis for his plea and that the court failed to adequately explain the nature of the money laundering charge. (ECF No. 30, p. 5). The factual basis for the plea has been previously addressed.

The longstanding test for determining the validity of a guilty plea is "whether the plea

represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); see *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962).  *Hill v. Lockhart*  474 U.S. 52, 56, 106 S.Ct. 366, 369 (U.S.Ark.,1985)

The charge of "Money Laundering" was set forth in the Plea Agreement (ECF No. 13, p. 1) which the Petitioner signed on October 29, 2009. (Id., p. 13).  The penalty range for both Count 1 and Count 2 (Money Laundering) was also set forth in the Plea Agreement. (Id., p. 4-5).

During the plea colloquy, the Court clearly inquired of Amador-Villanueva his desire to waive formal indictment and plead to an Information. (PPT, pp. 4-6). Amador-Villanueva informed the Court that he was aware of and had discussed the two counts and the forfeiture allegation charged in the Information with his attorney and that his attorney had explained the nature of the charges to him and reviewed with him all of the items of personal property included in the forfeiture allegation. (PPT, p. 4). The Petitioner also signed a Waiver of Indictment indicating that he had been "advised in open court of my rights and the nature of the proposed charges against" him. (ECF No. 10)  The Petitioner again confirmed that he had reviewed the Information with his attorney (ECF No. 32, p. 6) and that he had discussed paragraph eight of the plea agreement with his attorney (ECF No. 32, p. 13-14).  Paragraph eight was a Stipulation of Facts. (ECF No. 13, ¶ 8).

The Supreme Court has established that when a defendant pleads guilty without proper advice under Rule 11, he may appeal the conviction under at least a plain error standard, *U.S. v. Vonn*, 535 U.S. 55 at 59, 122 S.Ct. 1043, with relief potentially available where the defendant

-7-

can show "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). The Petitioner did not appeal his conviction.

Thus, "[s]ection 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, . . . or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). The "cause and actual prejudice" standard for post conviction relief from errors to which no contemporaneous objection was made require that the defendant show both "cause excusing his double procedural default" and "actual prejudice resulting from the errors of which he complains." Frady, 456 U.S. at 168. It is a very exacting standard of review, such that "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Id. at 165.

The facts of this case disclose that the Petitioner had private counsel, that he had gone over the plea agreement with his attorney and represented to the court that he understood the charge and the possible penalty.  At the sentencing hearing, which took place on July 16, 2010 the Petitioner represented that he had reviewed the PSR and gone over it with his attorney (ECF No. 33, p. 3) and no objections were raised.

**3.  Ineffective Assistance of Counsel:**

The Petitioner contends that his counsel was ineffective on five grounds and all pertain to the contention that there were insufficient facts for the Petitioner to be found guilty on the Money Laundering charge.

The Sixth Amendment of the Constitution of the United States affords a criminal

defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). 2254. *Cox v. Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted).

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v  Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

-9-

been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

Amador-Villanueva was charged with aiding and abetting money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(I) and 2. Title 18, United States Code, Section 1956(a)(1)(A)(I) reads as follows: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct a financial transaction which in fact involves the proceeds of a specified unlawful activity, with the intent to promote the carrying on of specified unlawful

activity." The investigation into J & A Loading and Amador Poultry Contracting revealed that Amador-Villanueva and his brothers owned and operated a chicken catching business operating in Arkansas and Texas from approximately 2003 to 2009. The investigation further revealed that Amador-Villanueva and his brothers knowingly employed illegal aliens, and provided housing and transportation for them. Thirty-three illegal aliens employed by Amador-Villanueva and his brothers were arrested during the investigation. Investigators determined that Amador-Villanueva and his brothers had never filed a Internal Revenue Service I-9 Form on any employee and the investigators were not able to identify any lawful employees of the business. Pursuant to the Plea Agreement, the government and Amador-Villanueva agreed to stipulate that the government could prove that Amador-Villanueva paid his employees approximately $2,300,000.00 during 2008. (Plea Agreement ¶ 8; PSR ¶ 33). Amador-Villanueva admitted he knew or had reason to know these employees were illegal aliens and he did not complete Internal Revenue Service I-9 Forms on them. (Plea Agreement ¶ 8; PSR ¶ 33).

The funds involved in the financial transactions conducted by Amador-Villanueva were proceeds of an unlawful activity, as the employees of Amador-Villanueva and his brothers were unlawfully in the United States and Amador-Villanueva and his brothers were aware of this fact and were harboring them. Pursuant to Title 18, United States Code, Section 1961(1)(F), any act which is indictable under the Immigration and Nationality Act, Section 274, relating to bringing in and harboring certain aliens, committed for the purpose of financial gain, is a specified unlawful activity for purposes of Title 18, United States Code, Section 1956. Conspiracy to harbor illegal aliens for financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and (v)(I) and (a)(I)(B)(I), is an act which is indictable under the Immigration

-11-

and Nationality Act, Section 274. The investigation revealed that Amador-Villanueva conducted financial transactions with the funds that were proceeds of an unlawful activity, namely harboring illegal aliens for financial gain. The services rendered by Amador-Villanueva and his brothers were not legitimate as the work was being performed and services were being provided by illegal aliens and Amador-Villanueva and his brothers were aware of this fact. The factual basis recited in the Stipulation of Facts contained paragraph 8 of the Plea Agreement, which Amador-Villanueva agreed that the government could prove, sufficiently supports Amador-Villanueva's conviction for money laundering.

The Petitioner's claim is wholly without merit.  It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.*  905 F.2d 218, 219 (C.A.8 (Minn.),1990).

**4.  Forfeiture Provision:**

The Petitioner contends that the forfeiture provision of the plea agreement and the judgment should be set aside "due to the invalidity of the money laundering convictions." (ECF No. 30, p. 8).

For the reasons stated above this argument is without merit.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo**

**review by the district court.**

      IT IS SO ORDERED this May 25, 2011


      */s/ J. Marschewski*
      HONORABLE JAMES R. MARSCHEWSKI
      CHIEF U. S. MAGISTRATE  JUDGE